**SIGNED.**

Dated: February 25, 2009



_____
**JAMES M. MARLAR**
**U.S. Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| RICK L GONZALEZ, | ) | No. 4:07-bk-02459-JMM |
| | ) | |
| | ) | **MEMORANDUM DECISION** |
| | ) | |
| Debtor. | ) | **RE: CLAIMS 10 AND 11** |

On January 12, 2009, a hearing was held on the Debtor's objections to the following claims of American Express Bank, FSB (Dkts. #27 and #28) :

        <u>Claim No. 10:</u>      Unsecured for $17,467.79

        <u>Claim No. 11:</u>      Unsecured for $9,234.09

Previously, this court narrowed the issues to be presented at this hearing, <u>i.e.</u>, the parties' intent to bind the Debtor personally for his company's credit card liability. <u>See</u> Memorandum Decision of December 17, 2008 (Dkt. #54).

Both parties filed legal briefs. After evidence was taken and arguments were heard, the court took the matter under advisement. The court now rules.

# JURISDICTION

The court has jurisdiction over this core proceeding. 28 U.S.C. § 157(b)(2)(B).

# FINDINGS OF FACT

1. The Debtor, Rick L. Gonzalez, was a principal of a corporation, Creative Entrepreneurs, LLC, dba "Creative Endeavors." The company was formed in 1997.

2. Creative Entrepreneurs filed for chapter 7 relief on April 2, 2007 (Case No. 4:07-bk-00524-JMM).

3. In the fall of 2005, an American Express business credit card application ("Application") was mailed to the business (Ex. 8), soliciting its use of a business credit card. Mr. Gonzalez filled out the form, and signed it on behalf of the corporation.

4. Mr. Gonzalez signed no document which obligated him personally. Exhibit 8 did not bind him personally. Exhibit 8 contains no legally binding agreement as to Mr. Gonzalez, such as "I personally guarantee this debt," or "I agree to pay the debts of the corporation if it fails to do so."

5. Pre-printed forms entitled "Business Credit Card Agreement" and "Business Cash Rebate Credit Card Agreement" (together "Agreement") (Exs. 4 and 5) later sent by American Express did not bind Mr. Gonzalez to his corporation's debts. Neither he nor the corporation ever signed such pre-printed forms. However, the corporation's acceptance and use of the credit card would bind it to honor its promises to repay such debts.

6. Mr. Gonzalez testified that when he signed Exhibit 8, applying for the business card, he did so only as an officer of his corporation, and did not intend thereby to bind himself personally.

7. No guarantee of the corporate debt, signed by Mr. Gonzalez, was presented as evidence by American Express.

8. The credit card was only used for the expenses of the corporation, and not for any purchases which were personal to Mr. Gonzalez.

9. American Express presented no written document of any kind, signed by the Mr. Gonzalez (other than Exhibit 8), through which the court could find that Mr. Gonzalez had obligated himself, personally, for the debts of his corporation to American Express.

10. Exhibit 8 is clearly intended to be only used by the business Creative Endeavors. The document contains other spaces inviting the <u>business</u> to "use this space to add more <u>employees</u> to <u>your</u> account" (emphasis added). Nothing in Exhibit 8 is specific or clear, <u>if</u> American Express expected to legally bind individuals, that anyone signing for the corporation was also to be charged personally for the corporation's debts.

11. Other exhibits refer, in large font and bold print, as the credit card being a "<u>Business</u> Credit Card Agreement" (Ex. 4), or a "<u>Business</u> Cash Rebate Credit Card Agreement" (Ex. 5) (emphasis supplied).

12. Even the American Express statements refer to the account as a "<u>Business</u> Management Account," or a "<u>Business</u> Cash Rebate Card" (Ex. 6 and 7) (emphasis supplied).

13. American Express presented no oral testimony to contradict Mr. Gonzalez' intention that, when he signed the card, he did not intend to bind himself personally. Nor did American Express present any oral testimony that <u>it</u> intended to bind Mr. Gonzalez personally. It only presented the written documents noted above.

14. Mr. Gonzalez did not intend to bind himself personally to the obligation of the corporation.

15. The signature block is signed by Mr. Gonzalez in his capacity as an authorized officer of the firm. The words "you" beneath the signature line are legally insufficient to bind Mr. Gonzalez, without other affirmative evidence from American Express that Mr. Gonzalez intended to bind himself personally. As this court previously found, that word was rendered ambiguous by the other writing on Exhibit 8. Mr. Gonzalez' testimony as to what he intended when he signed the card for the corporation was not rebutted.

16. If American Express intended to bind Mr. Gonzalez personally, by the use of the simple word "you" under his signature, that effort was deceptive and failed such purpose.

## **CONCLUSIONS OF LAW**

1. Rick L. Gonzalez is not personally liable for the credit card obligations of the corporation known as Creative Entrepreneurs, LLC, dba "Creative Endeavors."

2. Mr. Gonzalez persuaded the court, by a preponderance of the evidence, that he is not personally liable for the debts of the corporation. He met his burden of proof on this issue.

3. American Express claims numbered 10 and 11 will be disallowed.

## **DISCUSSION**

A proof of claim completed and filed in accordance with 11 U.S.C. § 501 and any applicable Bankruptcy Rules constitutes prima facie evidence of the validity and amount of the claim. FED. R. BANKR. P. 3001(f). The party objecting to the claim, pursuant to Bankruptcy Rule 3007 and 11 U.S.C. § 502(a), carries the burden of going forward "with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.'" In re Lundell, 223 F.3d 1035, 1039 (9th Cir. 2000) (quoting In re Holm, 931 F.2d 620, 623 (9th Cir. 1991). "In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir.1992). Once the objecting party succeeds in negating one or more of the sworn facts in the proof of claim, the burden reverts to the claimant who has the ultimate burden of persuasion to prove the validity of the claim by a preponderance of the evidence. In re Garvida, 347 B.R. 697, 706 (9th Cir. BAP 2006); Lundell, 223 F.3d at 1039.

This claim objection proceeding invokes federal bankruptcy jurisdiction and involves the resolution of state law issues, viz., the interpretation and enforcement of a credit card transaction.

Thus, American Express maintains that Utah law applies because the Agreement so provides; the Debtor has not challenged that assertion.

The Ninth Circuit directs us to apply federal choice of law rules in a federal bankruptcy proceeding. See In re Lindsay, 59 F.3d 942, 948 (9th Cir.1995); Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 161-62, 67 S.Ct. 237, 91 L.Ed. 162 (1946) (dictum). Federal choice of law rules follow the approach of the Restatement (Second) of Conflict of Laws. See In re Vortex Fishing Sys., Inc., 277 F.3d 1057, 1069 (9th Cir. 2002). Under the Restatement:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

Restatement (Second) of Conflict Of Laws § 187(1) (1989).[1]

The Agreement provided that Utah law would govern all questions about legality, enforceability and interpretation. The substantive question before the Court is one of contract formation--whether this was an enforceable contract between Mr. Gonzalez and American Express. Therefore, this court will apply Utah law.

Whether a contract has been formed is ultimately a conclusion of law. Terry v. Retirement Bd., 157 P.3d 362, 364 (Utah App. 2007). Whether an ambiguity exists in a contract is a question of law. The Cantamar, L.L.C. v. Champagne, 142 P.3d 140, 151 (Utah App. 2006). Previously, the court determined that the Application was ambiguous and that parol evidence was admissible on the issue of intent to hold Mr. Gonzalez personally liable. Daines v. Vincent, 190 P.3d 1269, 1276 (Utah 2008). American Express challenges that conclusion.

First it maintains that the Application was not part of the credit card agreement at all, but was merely a "solicitation to enter into an agreement" and a "preliminary negotiation." It cites the Restatement (Second) of Contracts § 26 as support. However, American Express has not provided, nor has the court found, a case that has applied this Restatement provision to a credit card

---

[1] Arizona would apply the same law. See Winsor v. Glasswerks PHX, L.L.C., 63 P.3d 1040, 1043 (Ariz. App. 2003); Swanson v. Image Bank, Inc., 77 P.3d 439, 268 (Ariz. 2003).

transaction. Moreover, Utah law explicitly provides that the Application is part of the Agreement. The Utah Statute of Frauds states: "for purposes of this act, a signed application constitutes a signed agreement, if the creditor does not customarily obtain an additional signed agreement from the debtor when granting the application." UTAH CODE § 25-5-4(2)(b)(ii).

Next, American Express contends that the Agreement constituted a fully integrated contract which could not be contradicted by evidence of any prior or contemporaneous agreement, i.e., the Application. In Utah, evidence of a prior oral agreement may not vary the terms of an integrated contract consisting of a writing or writings. Bennett v. Huish, 155 P.3d 917, 924-25 (Utah App. 2007); UTAH CODE § 25-5-4(2)(d). Here, the Application was a signed writing that was part of the integrated credit card contract. See Gregerson v. Jensen, 617 P.2d 369, 372-73 & n.4 (Utah 1980) (several writings may be construed together as containing all the terms of a contract although only one is signed). The contract was determined to be ambiguous, and parol testimony as to the parties' intent was therefore admissible. Vincent, 190 P.3d at 1276.

American Express points to the following portions of the Agreement which it alleges unambiguously bind the Mr. Gonzalez personally as the "Basic Cardmember" or an "Additional Cardmember":

**Welcome to American Express Cardmembership**

When you keep, sign or use the Business Card issued to you (including any renewal or replacement Business Cards), or you use the account associated with this Agreement (your "Card Account"), you agree to the terms of this Agreement. The words "you," "your" and "yours" mean the person named on the Business Card and/or, where applicable, the Company. You have received this Business Card at the request of the Company for use in connection with the Card Account. You will be called a "Business Cardmember" or "Additional Cardmember." The Basic Cardmember is the authorizing officer of the Company who authorized us to issue the Business Card to you by signing the Company's application for the Card Account. The term "Company" means the company, corporation or firm in whose name the Business Card Account is established. The Company, Basic Cardmember and Additional Cardmembers agree, both jointly and individually, to be bound by the terms of this Agreement.

. . .

**Status of and Responsibility for Basic and Additional Cardmembers**

. . .

> The Company and the Basic Cardmember are responsible under this Agreement for all use of the Card Account by the Basic Cardmember and Additional Cardmembers, and by anyone else the Basic Cardmember or an Additional Cardmembers lets use the Card, and the Charges they incur will be billed to the Basic Cardmember. . . .
>
> . . .
>
> Notwithstanding the Company's and the Basic Cardmembers' responsibility for all use of the Card Account, by each use of the Additional Card to incur Charges, the Additional Cardmember indicated his or her Agreement to pay us for the Charge and we may, at our discretion, pursue Additional Cardmembers for payment of Charges they incur or authorize even though we send bills to the Basic Cardmember and not to Additional Cardmembers.

"[T]he language of an ambiguous instrument should be construed most strictly against the party who drafted the instrument." Matter of Orris' Estate, 622 P.2d 337, 339 (Utah 1980). This language does not clearly make Mr. Gonzalez personally liable for payment of charges because the terms "jointly and individually liable" conflict with the language of the Application, which was devoid of any legally binding agreement as to Mr. Gonzalez, such as "I personally guarantee this debt," or "I agree to pay the debts of the corporation if it fails to do so." As the "Basic Cardmember" who authorized the card on behalf of the corporation, Mr. Gonzalez is the business contact and in that sense is the "responsible" party. Neither is there evidence in the language that a Basic Cardmember can also be an Additional Cardmember. In fact, the Agreement states, in an unquoted portion, that the cards of Additional Cardmembers are authorized by, and may be canceled by, the Basic Cardmember, which language implies that the Basic and Additional Cardmembers are different persons. See Agreement, supra., at 1.

The evidence presented at the hearing established that Mr. Gonzalez signed the business credit card Application on behalf of the corporation, that he did not intend to bind himself personally, and that his use of the card was entirely for corporation purchases. The Agreement also states that it is for a "business" credit card. Mr. Gonzalez' testimony and the evidence therefore established that, while there was a meeting of the minds as to the liability of the corporation, there was no meeting of the minds concerning his personal liability. Crimson v. Western Co. of North America, 742 P.2d 1219, 1221-22 (Utah App. 1987); Oberhansly v. Earle, 572 P.2d 1384, 1386 (Utah 1977) (meeting of minds required).

Utah contract law strictly requires evidence of intent, such as a signed personal guaranty, in order to be bound to another's debt. See Cessna Finance Corp. v. Meyer, 575 P.2d 1048, 1050-51 (Utah 1978); Restatement (Third) of Suretyship And Guaranty § 7 (1996) ("The requisites of contract formation apply generally to formation of a contract creating a secondary obligation."). This requirement is all the more salient considering that officers generally are not held personally liable for a corporation's debts. Reedeker v. Salisbury, 952 P.2d 577, 581-82 (Utah App. 1998). In particular, Utah's Revised Limited Liability Company Act generally provides that no member of an LLC is personally liable for a debt, obligation or liability of the company. UTAH CODE § 48-2c-601. An officer's personal liability can be based on known waiver or a written guaranty of the corporate debt. See, e.g., UTAH CODE § 48-2c-603; In re Kelaidis, 276 B.R.266, 270 (10th Cir. BAP 2002); Wells Fargo Bank. N.A. v. Midwest Realty & Fin., Inc., 544 P.2d 882, 884 (Utah 1975).[2]

Furthermore, Mr. Gonzalez testified that he was acting as an agent for the corporation, which could not act except through an agent. Salisbury, 952 P.2d at 582; Davis v. Payne & Day, Inc., 348 P.2d 337, 339 (Utah 960).

Finally, in order to meet its ultimate burden of persuasion, American Express maintains that by Debtor's use of the card he "manifested" an intent to accept all the terms of the Agreement, including his individual responsibility for any debts incurred. American Express recites valid law that even persons who do not sign a credit agreement can still be held liable for charges if they use the card after receiving a copy of the Agreement and its terms bind them. In essence, American Express is alleging the existence of an implied-in-fact contract by Debtor's use of the card.

---

[2] American Express, at one point, apparently realized the importance of obtaining written guaranties of the credit card debt from corporate officers. In American Express Co. v. Koerner, 452 U.S. 233, 237, 101 S.Ct. 2281, 2284, 68 L.Ed.2d 803 (1981), John E. Koerner & Co., Inc. applied for a business credit card to be used by officer Louis Koener. Koener was required to sign a "company account" form by which he agreed to be jointly and severally liable with the corporation for all charges incurred through the use of the company card issued to him. Id., 452 U.S. at 237, 101 S.Ct. at 2284.

In Utah, an implied-in-fact contract requires conduct evidencing both parties' mutual assent to be obligated by the certain terms of their bargain. See Fowler v. Taylor, 554 P.2d 205, 208 (Utah 1976). "To make out an implied in fact contract what must be shown is 'mutual intent ... manifested by particular acts and attendant circumstances.'" Orris' Estate, 622 P.2d at 340 (citation omitted). The existence of an implied-in-fact contract is a factual question. Sanderson v. First Sec. Leasing Co., 844 P.2d 303, 306 (Utah 1992).

Moreover, <u>unsigned</u> credit agreements are enforceable under Utah's Statute of Frauds if the debtor is provided with a written copy of the terms of the agreement, the agreement provides that any use of the credit card shall constitute acceptance of those terms, and the debtor thereafter uses the credit card. See UTAH CODE § 25-5-4(2)(e)[3]. However, the court need not enforce that part of the statute, because, here, there <u>was</u> a signed credit agreement, which is also provided for in the statute, between the corporation and American Express, and which this court has determined was ambiguous and did not bind Mr. Gonzalez personally for business-related charges. See UTAH CODE § 25-5-4(1)(f) and 4(2)(b)(ii); cf. MBNA America Bank, N.A., 140 P.3d 589, 592 (Utah App. 2006) (holding that under Utah law bank could enforce the <u>unsigned</u> credit card agreement against an individual who had requested and used a credit card).[4]

---

[3] Section 25-5-4(2)(e) provides:

 (e) A credit agreement is binding and enforceable without any signature by the party to be charged if:

  (i) the debtor is provided with a written copy of the terms of the agreement;

  (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and

  (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

[4] This court acknowledges that courts in other jurisdictions have imposed individual liability against an officer or employee who signed the application but did not sign in a personal capacity. See, e.g. Heiges v. JP Morgan Chase Bank, N.A., 521 F. Supp. 2d 641, 647 (N.D. Ohio 2007). However, this court believes that finding Mr. Gonzalez liable on these facts would allow the statutory exception to swallow the rule. In addition, to the extent that the exception

9

Case 4:07-bk-02459-BMW Doc 71 Filed 02/25/09 Entered 02/26/09 14:11:26 Desc
Main Document Page 9 of 12

The published cases which American Express has cited are factually distinguishable because they do not involve a corporate credit card or signed Application, so there was no issue over who the liable party was. For example, in <u>In re Cluff</u>, 313 B.R. 323 (Bankr. D. Utah 2004), the bankruptcy court held that credit card receipts met the evidentiary requirement for a claim to be "based on a writing," in lieu of a signed agreement, under Rule 3001(c). <u>Id.</u> at 334. In <u>Taylor v. First North American Nat'l Bank</u>, 325 F. Supp. 2d 1304 (M.D. Ala. 2004), the plaintiff had applied for a personal credit card over the telephone, and the court determined that she accepted the bank's terms contained in the cardmember agreement when she used the card. In <u>Citibank South Dakota N.A. v. Santoro</u>, 150 P.3d 429 (Or. App. 2006), the defendant argued that he had not signed the written agreement in connection with an individual credit card. The court concluded that the defendant's conduct in keeping and using the credit card constituted an acceptance of the agreement terms that were sent to him.

The remaining cited cases, which reach an opposite result, are unpublished decisions of courts in other jurisdictions that are either factually distinguishable or non-binding on this court.

This court has already determined that the signed Agreement lacked the contractual requisite of meeting of the minds in regards to binding Mr. Gonzalez personally. His subsequent use of the business card could not create a separate, personal contract that was nonexistent as to those terms. In this circumstance, the use of the card was part of a continuum of rights. As the Supreme Court described in another, but analogous context:

> Thus, a credit card company such as American Express extends credit to . . . an organization when it opens . . . an account, as well as when the cardholder actually uses the credit card to make purchases. When the account is opened . . ., the creditor has granted a right "to incur debt and defer its payment" ; when the card is used, the creditor has allowed the cardholder "to defer payment of debt."

<u>Koerner</u>, 452 U.S. at 241, 101 S.Ct. at 2286 (citing truth-in-lending law) (emphasis added).

In summary, even though the Agreement stated that use of the card by a Basic Cardmember, Mr. Gonzalez, would constitute an agreement to its terms, the terms did not, as

---

arguably serves to prevent fraud by cardholders, there was no fraud committed here.

American Express contends, unambiguously bind Mr. Gonzalez individually. The Agreement was for a <u>business</u> account; Debtor signed the Application, which was part of the Agreement, as the agent of the corporation with no intention of incurring personal liability; he did not provide his social security number; he was the "responsible" party only to the extent of his corporate officer agency role; he did not sign a personal guaranty or waive his protections under Utah law; and he only used the card for corporate purposes. American Express has not carried its burden to prove Mr. Gonzalez' individual liability for the credit card debt.

The court therefore concludes that Mr. Gonzalez presented sufficient evidence to rebut American Express' prima facie proofs of claim, and that American Express has not proven that it and the Debtor intended for him to be personally liable for the corporate obligations.[5]

## **RULING**

A separate order will be entered which disallows claims 10 and 11, filed by American Express.

DATED AND SIGNED ABOVE.

---

[5] Because a contract did not exist between Mr. Gonzalez and American Express, the court does not need to address Debtor's claim of alleged violations of federal (or state) unfair or deceptive practices acts. Such a demand requires an adversary proceeding, in any event. FED. R. BANKR. P. 3007(b) and 7001.

11

| | |
|---|---|
| COPIES served upon the following on the date signed above: | |
| Bruce D. Bridegroom<br>Bridegroom & Hayes<br>1656 N. Columbus Blvd.<br>Tucson, AZ 85712<br>Attorneys for Debtor | Email bruce.bridegroom@azbar.org |
| Mary K. Farrington-Lorch<br>Law Office of Mary K. Farrington-Lorch<br>3930 E. Camelback Road, Suite 100<br>Phoenix, AZ 85018<br>Attorneys for American Express | Email: Mary.Farrington-Lorch@azbar.org |
| Dianne Crandell Kerns, Trustee<br>7320 N. La Cholla #154<br>PMB 413<br>Tucson, AZ 85741-2305 | Email mail@dcktrustee.com |
| Office of the U.S. Trustee<br>230 North First Avenue, Suite 204<br>Phoenix, AZ 85003 | U.S. Mail |

By   <u>M.B. Thompson</u>
     Judicial Assistant